## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **NORTON SOUND HEALTH CORPORATION**<br>1000 Greg Kruschek Avenue<br>Nome, AK 99762<br><br>    PLAINTIFF,<br><br>    v.<br><br>**ALEX M. AZAR**, in his official capacity<br>as Secretary,<br>U.S. Department of Health & Human Services<br>200 Independence Ave, S.W.<br>Washington, DC 20201<br><br>**RADM MICHAEL D. WEAHKEE**, in his<br>official capacity as Acting Director,<br>Indian Health Service<br>5600 Fishers Lane<br>Rockville, MD 20857<br><br>    DEFENDANTS. | ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Case No. 1:18-cv-1136<br><br><br><br>**COMPLAINT** |

### COMPLAINT FOR DECLARATORY, MANDAMUS AND INJUNCTIVE RELIEF

Plaintiff Norton Sound Health Corporation complains and alleges as follows:

### INTRODUCTION

1. This action is brought by Norton Sound Health Corporation ("NSHC") against the United States Secretary of Health and Human Services ("HHS" or "Department") and the Acting Director of the Indian Health Service ("IHS") pursuant to 25 U.S.C. § 5331(a), an express cause of action for relief related to funding disputes in the Indian Self-Determination and Education Assistance Act ("ISDEAA").

2. NSHC operates health facilities and provides health care services to Alaska Natives and other beneficiaries pursuant to the Alaska Tribal Health Compact ("ATHC"), a

multi-tribe self-governance compact with the IHS under Title V of the ISDEAA, 25 U.S.C. § 5381, *et seq.*, and funding agreements ("FAs"), which include program funding amounts that are negotiated for each fiscal year between the IHS and NSHC to fund the programs, functions, services and activities ("PFSAs") that NSHC performs on behalf of IHS.

3. In addition to program funds due from IHS under the ATHC and FAs, NSHC is entitled to be paid contract support costs ("CSCs") to fund the administration of the PFSAs that it has contracted to perform on behalf of IHS. 25 U.S.C. § 5325; 25 U.S.C. § 5396(a) (mandatory application of § 5325 to Title V agreements). CSCs fund administrative costs that ATHC co-signers incur to carry out the FA but which are not provided in the base program amount. CSCs must not duplicate any portion of the base program amount.

4. The ATHC and the ISDEAA provide that if a co-signer and the IHS are unable to conclude timely negotiations for a subsequent fiscal year, the existing FA continues in place until the parties reach agreement on the terms of a subsequent FA.

5. If the parties reach agreement, the terms of the subsequent FA (including the funding amounts) are applied retroactively to the end of the term of the existing FA. If the parties cannot reach agreement, co-signers like NSHC have the option under the ISDEAA to submit a "final offer" to the IHS, which the IHS must either accept or reject on the basis of certain statutory criteria within 45 days of receipt. If the IHS rejects the final offer or fails to respond, the co-signer may sue the agency for relief in federal district court.

6. The current funding agreement between NSHC and IHS is the FY 2012 Funding Agreement which continues in place for FY 2012-2018 pursuant to Article III, Section 12(b) of the ATHC.

7. The negotiations for funding of CSCs in FY 2014 and FY 2015 remain open due to ongoing disagreement over the amount of funds within new staffing packages received by NSHC from IHS (known as "service unit shares") to pay for staffing of NSHC's new hospital that were duplicative of CSCs.

8. NSHC elected to calculate these duplicative costs using a new method, first made available to tribal organizations by IHS in the 2016 Indian Health Manual at Section 6-3.2E(3), called "Alternative B," or the "97/3 method." Under this method, three percent of any new service unit shares is deemed to be duplicative of CSCs and deducted from the CSCs paid to NSHC. This alternative to a line-by-line duplication analysis vastly simplified the process.

9. This action appeals IHS's February 1, 2018 rejection of NSHC's final offer ("Final Offer") to IHS made pursuant to the ISDEAA, 25 U.S.C. § 5387(b), in which NSHC exercised its right to apply the 97/3 method to determine the amount of CSCs due to NSHC for FY 2014 and FY 2015.

10. IHS's February 1, 2018 decision would reduce CSC payments due to NSHC by more than $3 million for FY 2014 and more than $4 million for FY 2015.

11. NSHC now seeks relief under Section 110 of the ISDEAA, which authorizes actions to challenge any action by an officer of the United States contrary to the ISDEAA, including injunctive relief to reverse the IHS decision and compel the IHS to fund the contract as proposed. 25 U.S.C. § 5331(a); *see also* 25 U.S.C. § 5391(a) ("contract," for purposes of Section 110, includes compacts and funding agreements, such as NSHC's, under Title V of the ISDEAA).

**PARTIES**

12. Plaintiff Norton Sound Health Corporation is an inter-tribal consortium, as defined by 25 U.S.C. § 5381(a)(5), governed by sixteen federally recognized Indian tribes in Alaska ("Member Tribes"). NSHC operates health care facilities in northwestern Alaska on behalf of its Member Tribes, including the Norton Sound Regional Hospital in Nome and Village Clinics in Brevig Mission, Elim, Gambell, Golovin, Koyuk, Little Diomede, St. Michael, Savoonga, Shaktoolik, Shishmaref, Stebbins, Teller, Unalakleet, Wales, and White Mountain.

13. Defendant Alex M. Azar, the United States Secretary of Health and Human Services ("Secretary"), has overall responsibility for carrying out all the functions, responsibilities, authorities, and duties of the United States Department of Health and Human Services, including oversight of the IHS, an agency within the Department. He is sued in his official capacity.

14. Defendant Rear Admiral Michael D. Weahkee is the Acting Director of the IHS, the agency charged by law with the responsibility for implementing the ISDEAA and other health laws benefiting American Indians and Alaska Natives, on behalf of the United States. 25 U.S.C. § 1661(c)(3). He is sued in his official capacity.

**JURISDICTION AND VENUE**

15. This court has jurisdiction under § 110(a) of the ISDEAA, 25 U.S.C. § 5331(a), which provides, in pertinent part:

> The United States district courts shall have original jurisdiction over any civil action or claim against the appropriate Secretary arising under this [Act] . . . In an action brought under this paragraph, the district courts may order appropriate relief including money damages, injunctive relief against any action by an officer of the United States or any agency thereof contrary to this [Act] or regulations promulgated thereunder, or mandamus to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this [Act] or regulations promulgated hereunder (including immediate injunctive relief to

reverse a declination finding under section 5321(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract.)

16.     The cause of action at Section 5331(a) is made applicable to self-governance compacts and funding agreements under 25 U.S.C. § 5391(a).  A self-governance tribe, in lieu of administratively appealing an IHS rejection of its final offer, may "directly proceed to initiate an action in a Federal district court pursuant to section 5331(a) of this title," 25 U.S.C. § 5387(c)(1)(C).

17.     Venue is proper under 28 U.S.C. § 1391(e) because the U.S. Department of Health and Human Services is located in the District of Columbia.

## STATUTORY BACKGROUND

18.     The ISDEAA authorizes Indian tribes and tribal organizations to assume responsibility to administer PFSAs that the Secretary would otherwise be obligated to provide under federal law to Indians and Alaska Natives.  25 U.S.C. § 5321(a)(1).  The purpose of the ISDEAA is to reduce federal domination of Indian programs and promote tribal self-determination and self-governance.  25 U.S.C. § 5302(b); *see also Cherokee Nation v. Leavitt*, 543 U.S. 631, 639 (2005).  The ISDEAA reflects the United States' commitment "to supporting and assisting Indian tribes in the development of strong and stable tribal governments, capable of administering quality programs and developing the economies of their respective communities." 25 U.S.C. § 5302(b).

19.     Title V of the ISDEAA requires the Secretary to establish and carry out within the IHS a program known as the "Tribal Self-Governance Program."  25 U.S.C. § 5382.  Title V requires the Secretary to negotiate and enter into self-governance compacts and funding agreements with tribes and tribal organizations participating in the self-governance program.

25 U.S.C. §§ 5384, 5385.  NSHC is a co-signer of the ATHC and a funding agreement under ISDEAA Title V.

20. 25 U.S.C. § 5385(b) requires that each funding agreement shall, "as determined by the Indian tribe," include all PFSAs administered by the IHS under certain listed laws, including the Indian Health Care Improvement Act, 25 U.S.C. § 1601, *et seq*.  By statute, the amount of funding provided by the Secretary for operation of the PFSAs included in each funding agreement must be at least as much as the Secretary would have spent on the PFSAs (or portions thereof) had the Secretary continued to operate them himself.  25 U.S.C. § 5325(a)(1); 25 U.S.C. § 5396 (making 25 U.S.C. § 5325 applicable to Title V compacts and funding agreements).  This amount is often referred to as the "Secretarial amount."

21. The ISDEAA also requires IHS to pay, in addition to the Secretarial amount, CSCs, which represent the reasonable administrative and overhead costs associated with carrying out the PFSAs.  *See* 25 U.S.C. § 5325(a)(2) and (3); *see also* 25 U.S.C. § 5396(a) (Title V provision stating that "[a]ll provisions of sections . . . 5325(a) through (k) . . . of [Title 25 U.S.C.] . . . shall apply to compacts and funding agreements authorized by this part").

22. CSCs include "reasonable costs for activities which must be carried on by a tribal organization as a contractor to ensure compliance with the terms of the contract and prudent management, but which… normally are not carried on by the respective Secretary in his direct operation of the program; or… are provided by the Secretary in support of the contracted program from resources other than those under contract."  25 U.S.C. § 5325(a)(2).

23. To avoid duplicative payment for CSCs that are already included in the Secretarial Amount, ISDEAA requires that "such funding shall not duplicate any funding" in the Secretarial Amount.  25 U.S.C. § 5325(a)(3).

24. The ISDEAA requires that, upon approval of the contract, "the Secretary <u>shall add to the contract the full amount of funds</u> to which the contractor is entitled [under section 106(a) of the ISDEAA]," including CSC.  25 U.S.C. § 5325(g) (emphasis added).  The U.S. Supreme Court has held, twice, that the ISDEAA requires the Government to pay *full* CSC.  *Salazar v. Ramah Navajo Chapter*, 567 U.S. 182, 185 (2012) ("we hold that the Government must pay each tribe's contract support costs in full"); *Cherokee Nation*, 543 U.S. at 634 ("The [ISDEAA] specifies that the Government must pay a tribe's costs, including administrative expenses.").

25. The ISDEAA does not define how the "full" amount of CSC must be determined, and Congress prohibited the agencies from promulgating regulations on this subject.  *See* 25 U.S.C. § 5328(a)(1) (Secretary "may not promulgate any regulation, nor impose any nonregulatory requirement," except with respect to specified subjects).  Therefore, over the years, IHS has published a series of CSC policy manuals and circulars describing how the agency would calculate and pay CSCs.  The current version, in the Indian Health Manual, Part 6, Chapter 3 ("CSC Policy"), details the procedures that "will be applied to contracts and compacts awarded pursuant to Title I and Title V, respectively, of the ISDEAA."  CSC Policy, § 6-3.1A.  Its guiding principles include the need to provide certainty with respect to CSC calculations, minimize burdens imposed on tribes, assure consistency and transparency, and respect the integrity of the government-to-government relationship with tribes.  *Id*. at § 6-3.1B.

26. In the negotiation of compacts and funding agreements, the Secretary "shall at all times negotiate in good faith to maximize implementation of the self-governance policy." 25 U.S.C. § 5387(e).

27. Title V of the ISDEAA provides for a "final offer" process in the event of a stalemate in negotiations for funding agreements. Section 507(b) of the ISDEAA, 25 U.S.C. § 5387(b), provides:

> In the event the Secretary and a participating Indian tribe are unable to agree, in whole or in part, on the terms of a compact or funding agreement (including funding levels), the Indian tribe may submit a final offer to the Secretary. Not more than 45 days after such submission, or within a longer time agreed upon by the Indian tribe, the Secretary shall review and make a determination with respect to such offer. In the absence of a timely rejection of the offer, in whole or in part, made in compliance with subsection (c), the offer shall be deemed agreed to by the Secretary.

28. Subsection 507(c) of the ISDEAA, 25 U.S.C. § 5387(c), provides that if the Secretary rejects a final offer, the Secretary shall provide timely written notification to the Indian tribe that "contains a specific finding that clearly demonstrates, or that is supported by a controlling legal authority," that one or more of the following four reasons for rejection apply:

> (1) the amount of funds proposed in the final offer exceeds the applicable funding level to which the Indian tribe is entitled under this subchapter;
>
> (2) the program, function, service, or activity (or portion thereof) that is the subject of the final offer is an inherent federal function that cannot legally be delegated to an Indian tribe;
>
> (3) the Indian tribe cannot carry out the program, function, service, or activity (or portion thereof) in a manner that would not result in significant danger or risk to the public health; or
>
> (4) the Indian tribe is not eligible to participate in self-governance under section 5383 of this title.

29. In any civil action challenging the rejection of a final offer, such as this one, "the Secretary shall have the burden of demonstrating by clear and convincing evidence the validity of the grounds for rejecting the offer (or a provision thereof)." 25 U.S.C. § 5387(d).

## GENERAL ALLEGATIONS

30.     The instant dispute involves the amount of CSCs associated with the staffing packages NSHC received from IHS for Funding Years 2014 and 2015. Specifically, NSHC challenges IHS's arbitrary rejection of NSHC's election to use a valid method, pursuant to IHS's stated policy, to calculate the amount of indirect cost funding contained in ISDEAA program funds that should be deducted from NSHC's CSCs in order to avoid duplicative payment.

31.     To staff its newly opened Norton Sound Regional Hospital in Nome, NSHC received three new staffing packages from IHS totaling $21,214,000. This influx of new funding triggered the requirement that the parties negotiate how much of those funds should be deemed duplicative indirect cost funding and deducted as an offset from CSCs associated with the program funding.

32.     Rather than negotiate, the IHS, in spreadsheets provided to NSHC on June 26, 2015 and April 12, 2016, unilaterally sought to impose an offset of $3,789,803 in allegedly duplicative funding for FY 2014 and a similar amount for FY 2015. IHS did not explain how this amount was derived, did not negotiate this amount with NSHC, and NSHC did not agree to the amount.

33.     On April 11, 2016, IHS proposed a new CSC policy which would allow ISDEAA contract awardees to elect to use the 97/3 method for calculation of costs within the Secretarial Amount determined to be duplicative of CSCs. Rather than a line-by-line analysis, under the 97/3 method, 97% of the staffing costs are deemed to be non-duplicative direct costs, and 3% indirect costs duplicative of CSC.

34. The 97/3 option addressed the fact that determining duplication through line-by-line comparison of funding is a contentious, time-consuming, and inexact process. The 97/3 method, developed by the IHS CSC workgroup after full tribal consultation, provides a reasonable approximation that saves much time and effort for both parties, eliminating hours or even days of negotiation and dispute with a simple calculation.

35. On June 29, 2016, NSHC responded to IHS's unilateral offset with a letter to IHS Agency Lead Negotiator Evangelyn "Angel" Dotomain, which included a calculation of NSHC's duplicative CSCs for FY 2014 and FY 2015 based on the 97/3 method in IHS's proposed CSC policy.

36. On August 31, 2016, IHS informed NSHC that the new policy was not yet in effect and not available to calculate duplicative costs, and would not be applied "retroactively."

37. On October 21, 2016, IHS formally adopted the 97/3 method and incorporated the new policy into the Indian Health Manual at Section 6-3.2E(3).

38. On December 19, 2016, NSHC CEO Angie Gorn sent a letter to Agency Lead Negotiator Dotomain seeking to resolve the standoff on FY 2014, FY 2015, and (by then) FY 2016 CSC funding. NSHC again proposed to use the newly-adopted 97/3 method, noting that, according to the IHS Health Manual, the 97/3 method applies "to the negotiation of indirect CSC funding in or after FY 2016," and that NSHC and IHS were still attempting to reconcile CSC funding for FYs 2014 and 2015 "in or after FY 2016." IHS did not respond, and the reconciliation process dragged on into 2017.

39. IHS's most recent iterations of the CSC calculation spreadsheets, provided to NSHC on October 2, 2017, include a duplication offset of $3,829,848 for both FY 2014 and FY

2015.  Once again IHS provided no backup calculations or documentation to explain how its duplication figure was derived.  In fact, the spreadsheets do not even include this figure, which can only be discovered by performing additional calculations against IHS's figures.  In stark contrast, NSHC proposed the simple and transparent 97/3 method, in which the duplication offset in each year would be three percent of the hospital staff expansion of $21,214,000, or $636,420.

40. On December 18, 2017, NSHC CEO Angie Gorn presented IHS Acting Director Michael D. Weahkee with a Final Offer to amend its FY 2012-FY2018 Funding Agreement and resolve the unaddressed CSCs related to the staffing expansion.  The Final Offer utilized the 97/3 method and would add CSCs to the contract amount in the amounts of $3,088,927 (FY 2014), and $8,849,314 (FY 2015), for a combined total of $11,938,241.

41. As detailed in NSHC's Final Offer to IHS, NSHC is entitled to over $3 million more, using the 97/3 method, than IHS's offset in FY 2014, and over $4 million more in FY 2015.

42. On December 21, 2017, only three days after NSHC presented IHS with its Final Offer and formally elected the 97/3 method, IHS Acting Director Weahkee issued a "Dear Tribal Leader" letter summarily revoking Section 6-3.2E(3) and stating that IHS had "become aware that this section may not conform in all cases with the statutory authority of the [ISDEAA]."

43. IHS's Contract Support Costs policy in its Indian Health Manual states that "[a]ll policies and circulars concerning the administration of CSC by IHS have been developed and revised through coordination and consultation with Tribes….  The IHS will continue to reassess

the chapter on a regular basis, and further changes will only be implemented after Tribal consultation." Indian Health Manual § 6-3.1D.

44. Despite the fact that Section 6-3.2E(3) of the Indian Health Manual was developed after months of consultation in which NSHC participated through a tribal workgroup, IHS conducted no consultation with tribal beneficiaries prior to its December 21, 2017 revocation of the 97/3 method in violation of its own consultation policy at Section 6-3.1D.

45. On February 1, 2018, Acting Director Weahkee sent NSHC CEO Gorn a letter characterized as a "final decision" in regard to NSHC's Final Offer (hereinafter, the "Final Decision Letter"), presenting three responses to NSHC's Final Offer.

46. First, in a procedural challenge to NSHC's Final Offer, IHS incorrectly stated that "the ISDEAA requires this matter be resolved through the Contract Disputes Act (CDA) claim process, starting with presentment of a claim letter" on the basis that NSHC's letter was not an "appropriate" final offer. By mischaracterizing NSHC's Final Offer as "a post-award claim[] alleging breach of an ISDEAA agreement," IHS argued that the agency was "not required to render a decision on the claim," and that NSHC's final offer "does not require rejection." Final Decision Letter at 9.

47. Despite IHS's mischaracterization, NSHC's funding agreements for FY 2014 and FY 2015 were not, and are not, finalized because the parties continue to negotiate the final CSC terms. The Final Offer was presented to IHS as NSHC's final position in that ongoing negotiation pursuant to 25 U.S.C. § 5387(b). The award is still open and in active negotiations; the negotiation was (and is) not a "post-award" landscape as IHS claims.

48.     Second, IHS argues that its policy containing the 97/3 method applies only to awards entered in or after FY 2016 and may not be applied "retroactively." But the 97/3 policy expressly states that it "shall apply <u>to the negotiation of indirect CSC funding in or after FY 2016</u>." Because NSHC and IHS were still negotiating in and after FY 2016, and NSHC elected to apply the 97/3 method in a current negotiation while the 97/3 policy was in effect, NSHC's election to use the 97/3 method is not "retroactive" but an appropriate application of IHS's policy to ongoing negotiations.

49.     IHS further relies on a provision in NSHC's FY 2012 Funding Agreement that requires IHS to pay CSCs to NSHC "in an amount no less than that due under" the 2007 IHS manual. That provision established a floor, and not a ceiling, on CSCs due to NSHC and does not preclude or conflict with NSHC's election of the 97/3 method.

50.     Third, IHS's Final Decision Letter stated that, if it were to make a decision addressing NSHC's Final Offer, "the IHS would partially reject the Tribe's final offer on the ground that the amount of funds proposed by the Tribe exceeds the applicable funding level to which NSHC is entitled" on the basis that "activities" included in NSHC's indirect funding costs were "already covered by the Secretarial amount and therefore in excess of the amount authorized under the ISDEAA."

51.     IHS's Final Decision Letter asserted that NSHC's proposal included funding for activities "that are already covered by the Secretarial amount," but made no attempt to describe those activities, show that funding for these activities was already transferred to NSHC, show how much funding for each activity was transferred, or reconcile those costs to IHS's proposed offset.

52. Because the Final Decision Letter (a) expressly refused to issue a decision on NSHC's Final Offer and (b) included, in the alternative, a basis for rejection that failed to "clearly demonstrate" that any of the limited statutory reasons for rejection at 25 U.S.C. § 5387(c) applied, the IHS's Final Decision Letter was not a "timely rejection" that was "made in compliance with" 25 U.S.C. 5387(c), and the Final Offer must be deemed approved pursuant to 25 U.S.C. § 5387(b).

53. Because NSHC timely elected to use the 2016 CSC duplication analysis policy at Section 6-3.2E(3) before it was revoked, the policy remains available to NSHC for FY 2014 and FY 2015 negotiations related to the service unit shares at issue because, as this Court has determined, "the applicable funding level for a contract proposal is to be determined from the date the agency receives the tribe's proposal." *Pyramid Lake Paiute Tribe v. Burwell*, 70 F.Supp.3d 534, 543 (D.D.C. 2014).

54. The Declaratory Judgment Act, 28 U.S.C. § 2201, authorizes this Court to grant declaratory relief.

55. 25 U.S.C. § 5331(a) authorizes this court to provide mandamus relief "to compel an officer or employee of the United States, or any agency thereof, to perform a duty provided under this subchapter or regulations hereunder." Section 5331(a) also authorizes this court to award money damages or provide injunctive relief "against any action by an officer of the United States or any agency thereof contrary to this subchapter . . . (including immediate injunctive relief to reverse a declination finding under section 5321(a)(2) of this title or to compel the Secretary to award and fund an approved self-determination contract)."

## CAUSES OF ACTION

### COUNT I

### IHS's FAILURE TO PAY FULL CSCs to NSHC VIOLATED ISDEAA SECTION 106(a)

56.     The allegations in Paragraphs 1–55 are herein incorporated by reference.

57.     The ISDEAA requires IHS to pay NSHC's contract support costs in full. ISDEAA § 106(a)(2), 25 U.S.C. § 5325(g); *Salazar v. Ramah Navajo Chapter*, 567 U.S. at 185.

58.     IHS bears "the burden of demonstrating by clear and convincing evidence the validity of the grounds for rejecting" any proposed funding levels.  25 U.S.C. § 5387(d).

59.     NSHC's Final Offer set forth a calculation of NSHC's contract support costs based on IHS's published method for calculating indirect costs associated with the expanded service unit shares, as described at Section 6-3.2E(3) of the applicable 2016 Indian Health Manual.

60.     IHS's February 1, 2018 Final Decision, however, set forth an unsupported amount for CSCs duplicative of service unit shares, accompanied by no evidence (a) describing any duplication of activities, (b) showing that funding for these activities was transferred to NSHC in the Secretarial amount, (c) showing how much funding for each activity was transferred, or (d) reconciling those costs to IHS's proposed amount.

61.     When IHS fails to meet the strict standard for rejecting a final offer, the statutory remedy is mandamus or "immediate injunctive relief to reverse [the rejection] or to compel the Secretary to award and fund" the agreement as proposed.  25 U.S.C. § 5331(a).

62.     Because IHS's Final Decision failed to set forth clear and convincing evidence supporting its own CSC duplication amount, or disputing NSHC's calculation, NSHC is entitled

to an Order declaring that IHS failed to fully fund NSHC's contract support costs in violation Section 106(a) and compelling IHS to award and fund NSHC's Final Offer as proposed.

## COUNT II

## DEFENDANTS' FAILURE TO RENDER A DECISION IN ACCORDANCE WITH THE STATUTORY CRITERIA VIOLATED SECTION 507 OF THE ISDEAA

63. The allegations in Paragraphs 1–55 and 57-62 are herein incorporated by reference.

64. Section 507(b) of the ISDEAA, 25 U.S.C. § 5387(b), requires IHS to issue a determination on NSHC's Final Offer within 45 days. Section 507(c) of the ISDEAA, 25 U.S.C. § 5387(c), provides that IHS may only reject the Final Offer through a "specific finding that clearly demonstrates, or that is supported by a controlling legal authority" that one of four enumerated rejection criteria at 25 U.S.C. § 5387(c)(1)(A)(i-iv) applies, or "the offer shall be deemed agreed to by the Secretary." 25 U.S.C. § 5387(b).

65. Instead of issuing a determination on NSHC's December 16, 2017 Final Offer clearly demonstrating that one of the four rejection criteria applied, IHS responded that the agency was "not required to render a decision on the claim," and that NSHC's final offer "does not require rejection" on the basis that the dispute is a post-award dispute governed by the Contract Disputes Act.

66. IHS further responded in the alternative, and, without any evidence or legal authority, that "activities" included in NSHC's indirect funding costs were "already covered by the Secretarial amount and therefore in excess of the amount authorized under the ISDEAA."

67. IHS failed to clearly demonstrate that the one statutory rejection criterion that it purported to rely on—that "the amount of funds proposed in the final offer exceeds the applicable funding level to which NSHC is entitled" under the ISDEAA—applies.

68. Because none of IHS's proffered reasons constitute "a specific finding that clearly demonstrates, or that is supported by a controlling legal authority" that the rejection criteria at 25 U.S.C. § 5387(c)(1)(A)(i-iv) apply to NSHC's Final Offer, NSHC is entitled to an Order from this Court pursuant to 25 U.S.C. § 5387(b) compelling IHS to fund NSHC's Final Offer as proposed.

## PRAYER FOR RELIEF

69. In accordance with 25 U.S.C. § 5331(a), NSHC respectfully asks that this Court:

A. Declare that IHS failed to fully fund NSHC's contract support costs in violation of ISDEAA Section 106(a);

B. Declare that IHS's unsubstantiated rejection of NSHC's Final Offer failed to meet the statutory rejection criteria at 25 U.S.C. § 5387(c)(1)(A) and was contrary to the ISDEAA and IHS policy;

C. Declare that the Final Offer was properly made pursuant to the ISDEAA dispute resolution provisions at 25 U.S.C. § 5387, and that the Contract Disputes Act does not apply to this dispute;

D. Declare that NSHC is entitled to use the 97/3 method of duplication analysis in the 2016 Indian Health Manual for FY 2014 and FY 2015 service unit shares and that NSHC's election to do so in its Final Offer is binding on IHS;

E. Grant injunctive and mandamus relief to reverse IHS's rejection of NSHC's December 16, 2017 Final Offer and to compel the Defendants to fully fund the FY 2014 and FY 2015 funding agreements as proposed by NSHC;

F. Award damages from the federal Judgment Fund in the event that congressional appropriations for FY 2014 and FY 2015 are no longer available to meet IHS's commitments under the ISDEAA;

G. Award interest on the amount of the award or damages in accordance with the Prompt Payment Act or other applicable law;

H. Award reasonable attorney fees and expenses in favor of NSHC under the Equal Access to Justice Act, 28 U.S.C. § 2412, and any other applicable law; and

I. Grant such other relief as the Court deems just.

DATED: May 14, 2018

Respectfully submitted,

 /s/ Patrick M. Sullivan
Patrick M. Sullivan (DC Bar No. 1018119)
Hobbs, Straus, Dean & Walker, LLP
516 SE Morrison Street, Suite 1200
Portland, OR 97214
503-242-1745 (Tel.)
503-242-1072 (Fax)

Geoffrey D. Strommer, *pro hac vice pending*
Stephen D. Osborne, *pro hac vice pending*
Hobbs, Straus, Dean & Walker, LLP
516 SE Morrison Street, Suite 1200
Portland, OR 97214
503-242-1745 (Tel.)
503-242-1072 (Fax)

*Attorneys for Norton Sound Health Corporation*